Good morning, your honor. May it please the court, I'm Christopher Cannon. I represent the Brights. I'd like to reserve five minutes for rebuttal in this case. As the district court indicated in this case, the most significant issue in this case is the offshore credit cards and the Brights' Fifth Amendment rights not to produce those offshore credit cards. This is not a blanket assertion of a Fifth Amendment case. This is not an attempt to relitigate any issue. This is really just a straight appeal from the contempt order saying that they're in contempt for not producing the offshore credit cards. The government keeps talking about this as some sort of blanket assertion of the Fifth Amendment privilege. It's clearly not. The summons called for 15 specific categories of records. And there's no dispute that 10 complete categories were absolutely fulfilled. There are five categories that the government contends that there are some problems with. But when you look at those additional five categories, the district court clearly said the most significant issue is the credit cards. And the district court also used the failure of the Brights to produce the offshore credit cards as evidence that they had somehow were withholding other records. So I understand that you're just limiting your argument to us on the offshore credit cards. We don't have to decide whether or not there was noncompliance with other documents. No. I'm also contending that the district court was clearly erroneous when it found that the Brights were not in compliance with the other additional four areas. And the reason the district court was clearly erroneous on that issue is if you look at the declaration of Cherie Bright, in the district court order at page 16, the district court said the government has further established that the following documents remain outstanding. Documents related to colony mortgage loan, documents related to third-party American Express accounts payable, documents related to an insurance claim, documents related to scholarship grants. The declaration of Ms. Bright and the exhibits attached to that declaration, which is the excerpt of record 172 and following to 363, clearly shows that this finding by the district court, which was based upon a reliance on what the magistrate was saying, is clearly erroneous. The magistrate found Ms. Bright hadn't produced the colony mortgage documents. In fact, she had produced the colony mortgage itself. She produced the amortization schedule. She produced the checks that had been obtained. Everything had been produced except documents which don't exist, and she provided an explanation that they didn't exist. It's the same for all of those categories which the district court found had not been produced. If the court will look at the category regarding scholarship records, I think that's particularly persuasive to show why the district court simply wasn't paying attention to the evidence. Well, the court did acknowledge right below the quotation you were reading that your argument that the items were produced or that they didn't exist, I think that the court didn't believe that they didn't exist. But what I'm saying, Your Honor, is that the documents were produced. If the court will look at the declaration of Ms. Bright, and if the court will look at declaration of Ms. Bright begins at excerpt of record 172 and goes to 363, those are the specific documents that were requested. I mean, if you're talking about the scholarship records that I was just talking about, if you look at that, the scholarship records begin at page 321 and go all the way to 360. And those scholarship records were obtained. We got permission from Ms. Bright's son to get his entire financial aid file from the school that he was going to. That's the only place he was attending school. We turned the entire financial aid file over to the government. So to simply claim that the scholarship records weren't produced is a clearly erroneous finding of fact. Well, you already have the scholarship records sent out to school, gave them to you, right? That's correct, and they were turned over to the government, but yet the district court found that they hadn't been turned over. That's what's clearly erroneous about the district court finding is to the scholarship record. Frankly, it's just very strict. Did the school give the IRS the records? They gave me the records, and I gave them to the IRS. Okay. But yet the Brights were found in contempt for not turning those over. And the district court claims that the offshore credit cards, the existence of the... and so on, loan number ending 006 and any other loan documents, all of the... it's your contention that all of those documents were produced or were... but there were some that were not available, and that's what Ms. Bright's... Sensitive declaration, correct. And so the physical documents had actually been turned over, so the documents that are listed in that paragraph one and subparagraph one of the district court record was wrong. Correct. Okay, now he cites to the... your response... the declaration came in in... I think this order was when this was... The declaration came in response to the magistrate's findings and recommendation. But the objections or the appeal from the magistrate's order was in May 29th, I think, and then the declaration came in in... Subsequent to that, correct. Subsequent, and this order is August 20th, so it's your contention, as I understand it, that the district court didn't look to the Bright declaration? It's... Do we know that one way or the other? The district court's order states that it considered the Bright declaration. Where does it state that it considered the Bright declaration? I've been looking for that. I know he says that the no-go review... I actually had the note, Your Honor. Rather than waste my time now... Give it to me on... I'll give it to you on the site. Okay. That would answer a good question for me. Okay. I will get that for you. And the district court also found that there was no Fifth Amendment privilege as to the offshore credit cards because there was a foregone conclusion. That finding is wrong as to the law because the government has not even begun to suggest how they could authenticate or identify the offshore credit cards absent the Bright's testimony. And that's really the key issue in this case is the credit cards because this isn't a blanket assertion case. As I said before, the district court obviously was upset that the Brights said, we're not handing over the offshore credit cards. We're asserting our Fifth Amendment privilege. And the district court expressly says, I'm going to use that assertion of the Fifth Amendment privilege to look at your production of everything else. And... Why do you say that they couldn't be authenticated? Why couldn't the bank personnel authenticate them? Because the banks that have... The government doesn't have the ability to subpoena these records. There's a long answer to that, and I'll give it to you. Give me the short version. The short version is, at the time this appeal was filed, it was the belief on both the government and the Brights that there was no way to serve process upon the banks to show, to get the records other than the Brights requesting them directly. Because the banks would assert confidentiality and privacy of their clients. But once the government had the documents from the client, you're telling me the government was incapable of going to the bank personnel... That's correct. ...and taking testimony from them to authenticate the documents. Correct. Because these banks did not have tax treaties with the United States, so there would be no way to get letters rogatory that would allow the bank personnel to authenticate these documents. And also, for the foregone conclusion to apply, the government has to take those steps prior to requesting the production. That simply didn't happen in this case. So there's no way for the government to identify or authenticate these records absent the Brights' production of them. And it's the act of production that would authenticate and identify these bank records. And that's the heart of this case. That's the most important part of this case. Did the government present any evidence to the trial court that certain documents existed and that the defendants were refusing to get or certify copies in response to the subpoena? The government presented evidence that two bank accounts existed. How did they know that a bank account existed if they had no access to any record from one of those banks? They had a couple of credit card slips showing the account number. So they had a couple of credit card slips that gave the government the account numbers. So the government was able to identify the account number, but the government was not able to identify or authenticate the records from the account. And that's really the issue of this case. Do you know whether those accounts are open or closed? Are there records that exist at all? This case is ongoing, and because the Brights have been held in contempt, we've been able to issue a subpoena to a U.S. processor of those accounts. And as of this date, most of those records have been turned over. So what are we fussing about now? We're fussing about the financial penalty that has been imposed, and the only reason those records were turned over was because the court said, unless you turn those records over, you're going to jail. So based upon that clear threat by the court, the Brights were compelled to turn over those records. So is this moot? No, it is not moot, because if this court finds that the Brights have a Fifth Amendment privilege to not turn over the records, the compelled records can't be used against them. Okay. Thank you, and I'll save my remaining time for a bunch of questions. You may do that. Thank you. Thank you. We'll hear from the government. And get that cite for me, if you can. I will. May it please the court, my name is Carol Barthel, and I represent the government in this case. This is a case to determine the proper tax liabilities of two taxpayers, Sharia and Benjamin Bright. The district court's order enforcing the summons to obtain documents by which their tax liability was to be obtained was clearly correct, and its order finding them in contempt of its order requiring them to comply with the summons was well within that court's discretion. With respect to the enforcement action, after the government made it showing under Powell of proper purpose, it was up to the Brights to present their defenses, which they failed to do. The only defense that they raise on appeal is their defense with respect to the Fifth Amendment right of privilege, and they raised that only with respect to the credit cards. Well, they also raised, as we've just heard, the objection. Basically, as I understand it, this is an appeal from a contempt sanction order, and the district court looked at two categories, the offshore accounts and then the other documents that the court found had not been produced and imposed a sanction for both failures. So it's not just the Fifth Amendment. There's also whether or not they had complied and how they could cure it was to produce or explain adequately why they didn't have access to the documents or that they didn't exist. So those are two prongs, right? Not exactly, Your Honor. There are five categories of outstanding documents at the time the summons enforcement order was issued. The Brights had, in fact, made a blanket Fifth Amendment, Fourth Amendment, all sorts of defenses against all of these documents. They did not identify any particular documents that they were making this defense about, nor did they say what potential incrimination would be involved in producing any of these documents. They never made an offer to produce the documents and assert confidentiality, with respect to any particular document in camera for the court or a privilege law. They simply said Fifth Amendment, we're not going to produce anything with respect to all categories. The court held that they had not properly invoked the privilege with respect to any documents because … Well, but one of these categories, the documents, in fact, had been produced before the August date on which the district court found that the documents had not been produced. Well, a very short answer would be that after the contempt order was issued, they continued to produce more documents. Well, but wait a minute. Wait, let's answer the question. The question is, there's a June declaration, which proffers the documents, post the magistrate judge's ruling, and there is an August ruling. So the question is, at the time the district court said, as we read, the government has further established that the following documents remain outstanding. That's one leg of the district court's finding of contempt. Including, of course, the credit card documents. And their argument is, we did, before, judge, before you entered the contempt order, you were signed off on it, but they had produced it. The court found that they had not produced it, that their declarations of unavailability were ambiguous, to put it mildly. They were supposed to, they were required, under the enforcement order, to make all reasonable efforts to obtain these documents and produce them. But the declaration said that they did produce them. The declaration. Not the one that, there are two categories. There are the ones that they're now saying are covered by the Fifth Amendment privilege. But then there are four categories, such as the loan documents and so forth, that we were discussing. There were four other categories. With respect to those, were they actually produced between June and August? No, they were not, Your Honor. They had been dribbling out documents over the course of three years. So her declaration was ambiguous and incorrect. At the time she issued that declaration, they had dumped 354 documents on the district court the day of the hearing. The IRS went through and found 93 of them. Dumped is a loaded word. If they were produced, they were produced. Dumped or produced. Take your pick. If those were the documents that had been demanded, then is it proper for the court to say they had not been produced? Those were not the documents that had been demanded. The IRS found after going through those documents that had been produced, well after they were supposed to have been produced, that of the 354 documents produced, only 93 were potentially responsive to the summons enforcement order. And of those, a number of them were duplicates. The court found... Your demand for documents is not specific either. It's all documents. It's a very general category. So you get a wastebasket full of documents, and then you call them being dumped on you. And then you find that 92 relate to the particular tax analysis you're trying to make. But you still say they haven't complied. They had not complied. They have made, since then, greater efforts at compliance. And there are still, as I speak, documents outstanding as the district court has continued to find. Have you identified them by date, maker, and owner of the document? Type of documents. There are various ways in which they could satisfy the request. One is to make a definitive declaration that the documents do not exist, which they have not done. A definitive declaration... Do the documents have to be in their possession? No, they have... Could they be in somebody else's possession? They could be in somebody else's possession if they could make a reasonable effort to obtain those documents. They did not... That's another way they could have satisfied the order, is to show that they had made all reasonable efforts to obtain these documents and provide documentation... So you don't specify the date on which the document is executed or made, or who has possession of it. In other words, you don't know enough about the document to say that they have failed to produce a document that doesn't exist. For instance, a particular type of document that was being requested was with respect to a colony mortgage. The loan was made on May 22nd of, I believe, 2003. They requested all information respecting money that they had received from colony mortgage before that date. This could have been responded to in two ways. A, we have... No such documents exist. Or B, we have made the following efforts to obtain these documents and have been unable to do so. They did not do either of those with respect to a really quite specific type of document. And if you look at the summons that was issued, the types of documents are really pretty specific. They're not all documents respecting colony mortgage. They cite all documents such as A, B, C, D, E. If you have these, produce them. The all documents language is there. It is there, but there are specific ones. Such as. And the court found that this was specific enough for them to have understood it. They did not raise an overbreadth defense. They never said, we don't know what you're talking about. That was not raised at the enforcement proceeding, which is where it had to be raised, to say we cannot comply with the summons. It's overbroad. We don't know what you're talking about. They never said that. They said, oh, you didn't serve it to the right address. Things like that. Why don't you turn to the Fifth Amendment issue. Sure. Because they've said there's no way you could have authenticated the documents absent their being produced by the Brights and thereby implicitly authenticated. They have also indicated that those documents have been obtained by subpoena to Pfizer, which is the servicing agency for these offshore MasterCard documents. The government could obtain authentication by the same means. And the government's foregoing conclusion is based on the knowledge that these accounts existed. The information that was presented regarding the offshore credit card project had identified these accounts, these credit card accounts. They had attached Sherry Bright's use of these cards to those accounts so that the existence of the accounts was a foregoing conclusion. The government had information on that. The government also had information that she used these for accounts, both the ones that were in the original summons and the ones that they had known about at the time of that summons because they were in the summons issued to Morgan Liddell, her business partner, on the very same day. They subsequently found that she had used those cards as well. So that both the existence and the possession of records relating to these accounts, that is the account statements, the sorts of things that in the ordinary course of business a card user would have, was foregone conclusion. Whereupon her production of these cards, Ms. Bright's production of these records relating to these cards, would have no testimonial significance because the government already knows about them. The contents, of course, are not privileged. They were not created under compulsion, so they're not testimonial in that respect, nor is their production testimonial. It is simply, as the court said, not testimony, but surrender. That's what we're looking for, surrender to find their proper tax liability. What would be the result, and I know that you disagree with this hypothetical's correctness, but I just would like your view on this. Let's suppose we were to find that the district court erroneously found that the scholarship and financial aid documents weren't produced. Say we think that was an erroneous finding, but everything else is fine. What would we do if one or two of the findings were clearly erroneous, but the remainder were proper? What would be the result? Well, they will be at contempt if they have not substantially complied. So presumably substantial compliance would mean the greater part, and if you found that a remand was necessary with respect to a few documents, that would not make the order of contempt and abuse of discretion. But I might note with respect to the scholarship documents, they only went to the school. Ms. Bright is the CPA for the organization that made the scholarships. She did not approach that organization or show that that organization had not responded to any approaches that she had made. That would have been documentation that she could have brought to show that she had made reasonable efforts. Simply going to the school, which was only the recipient of the money, was step one. But going to the actual givers of the scholarship would have been a reasonable effort to make in order to obtain documents with respect to that scholarship. As the district court found, she had not shown that she had made reasonable efforts to obtain responsive documents. Counsel is going to give me the cite, but do you operate on the assumption that when the district court wrote its August order, it had in fact looked at and considered the Bright declaration filed in June? Yes, of course. And in fact, what the court says The court doesn't refer to it. It doesn't do any of the specificity you've just given us in terms of saying, well, Sherry Bright's declaration is deficient in these respects. And what bothers me is that at page 22, a satisfactory response would include a more definitive declaration by respondents that the documents do not exist, or documentation showing that despite making all reasonable efforts to comply, they have a present inability to do so. So I don't know whether he's saying, well, the Bright declaration is a halfway step. That's exactly what the court is saying. But he's not saying, he doesn't say A more definitive declaration. They've presented this declaration, but it is hardly definitive. It is in fact equivocal in some ways. With respect to certain documents, she said, Well, I've produced everything I happen to have at hand, and all of those that I was able to find out about with documents that I had reasonable access to. She didn't provide any evidence. She didn't declare they didn't exist. She didn't provide any supporting documentation to show what efforts she had made. This is not a definitive declaration. The court is looking for a more definitive declaration. So your time has expired. Thank you very much. Thank you. Mr. Kahneman, you have some rebuttal time. Thank you very much. The first thing I'd like to do is address Justice Fischer's question. There's no justice. I'm searching for justice, and I hope those three judges can provide it. If you look at page six of the excerpt of record, that indicates on August 1st, the court issued a minute order stating it would permit respondents to file their reply and take into consideration their request for a hearing. I think that that implies the court considered it. Okay. Now, the reason I went down this path is that I thought you were arguing that it didn't consider it. No. I'm saying that it was in front of the court, and the court said that it did consider it, but it's clearly erroneous in its findings because its findings are contradicted by the declaration. The findings of failure to provide the documents. Well, okay, so that's the narrow ground. You say that actually there were documents. That were produced that clearly contradict the district court's order. We just reviewed what the district court faulted, as counsel for the government pointed out, is failure to definitively say they don't exist, and the Brights have made all reasonable efforts to find them. That's what he says is the purgation, if you will, opening that you have. And if I look at the Bright declaration, all she says is I've complied to the best of my ability, and I don't have them. I think that that's true, and I think the best example as to why that's all that she can say in a situation like this is because it's clear that she doesn't have some of the records. As to records that are held by third parties, she can't say whether they exist or not because she doesn't have them. All she can do is try to get them. For example. She's tried to get them. Yes. For example. Where did she say that? For example, in the excerpt of record page 360, it directly addresses what the government was just up here saying. The government was saying that Ms. Bright, well, the financial aid file isn't enough. Ms. Bright should have sent records to the organizations that were issuing the scholarships. Well, that's exactly what the document at page 360 is. It's a letter by Ms. Bright to Colin Schaaf, who was the administrator of these organizations, asking him for the records. And he said, no, I don't have any records. Get them from the school. So we followed up to get them from the school. When was that done? What is 360? I don't have 360. 360 is the letter from Ms. Bright to Colin Schaaf asking for the financial aid records. When did she send the letter? That was before the district court. Yes. She sent the letter June 11, 2008. And in addition, the government said that there was... So that was after the magistrate judge had already ruled, yes? Yes, and it was presented to the district court because obviously she read the magistrate judge's opinion. He said more should be done. And when the government talks about more should be done, she's not providing additional records. She's providing additional evidence that she's done everything that she could possibly do. And the government said that there was... The government said that Ms. Bright should provide evidence of additional payments prior to May 22. Well, that was provided, attached to Ms. Bright's declaration in Excerpt of Record 363. She provided a ledger of all the payments that she had obtained. So everything that she was asked to do, she did. She followed up. She provided the records. And finally, the government says that now the government could get the records from FISERV. Therefore, the foregone conclusion document doesn't apply. Well, that's not an accurate state of the law because we look at the state of the record at the time the summons was enforced. I'm sorry, at the time the summons was issued, or at worst, the date that the order of enforcement was. And as of that date, no one knew about FISERV. The government didn't find out about FISERV until I figured out that there had to be some sort of American credit card processor involved in this. I issued the subpoena to FISERV, and I got the foreign documents much later, much after this appeal was filed, several months ago. So the government didn't have the ability to independently authenticate and identify those records until the Brights, at the compulsion of going to jail, authorized me to do everything possible. Until I figured out how to get the records from FISERV. Thank you, counsel. That was a compelling production. Thank you. We appreciate the arguments of both parties. The case just argued is submitted.
judges: Beezer, Graber, Fisher